Mr. Justice James
delivered the opinion of the court.
This is an action of trespass to recover damages for the unlawful arrest and false imprisonment of the plaintiff. The case comes before us upon a bill of exceptions in which is included a case stated.
It is unnecessary to detail all the facts of the case. The substance of it is, that, upon the professional advice of Mr. N. H. Miller, an attorney at law, one of the defendants, the defendant Porter, accompanied by Miller and the defendant Hitchcock, went to the police station and informed officers Yernon and Carter that a forgery and larceny had been committed; and he then undertook to state (whether correctly or not) the circumstances which induced him to believe that the plaintiff was the person who was guilty of these two crimes.
Thereupon Carter, in company with these three defendants, started out to obtain a warrant, but the hour being late they were unable to obtain' it, and fearing, as they said, that the defendant would leave the city, Carter made the arrest without the warrant.
The principal question before us, was, whether Porter, the complaining party, and Miller and Hitchcock so participated in the arrest as to render them gnilty of a trespass; or whether, on the other hand, if their action consisted merely in lodging an information, correct or incorrect, which induced the police officer to make the arrest, but in which their participation extended no further, they were liable in an action of trespass.
The court below expressed its opinion very decidedly upon this point, and here I might say that at the very beginning of our inquiry we are presented by the bill of exceptions with a rather curious question, namely: whether the trial justice, in expressing that opinion, was addressing his remarks to the jury or merely giving to the counsel in the case his reasons for rejecting some of their prayers.
In their argument before us, counsel differed widely upon this point. We find, however, upon reading the bill of ex *26 ceptions, that these remarks of the court are preceded by this paragraph:
“And thereupon the court severally rejected all the said prayers of the plaintiff, excepting the sixth; and severally rejected all of the said prayers of the defendants as asked, except the twenty-fifth and the thirty-third, as modified by the addition' at the end thereof of the words enclosed in brackets, which words the court, of its own motion, added against the objection of the defendants; and thereupon, the court, of its own motion, instructed the jury as follows.”
And then came the remarks, to be stated presently, which the plaintiff’s counsel insists were not addressed to the jury, but to counsel. At the same time it is to be observed that although here is a distinct statement in the bill of exceptions that these remarks were addressed to the jury, we find the court concluding them with this sentence:
“ In 'that view, gentlemen, of the general rule of the law, I now proceed to announee to the jury the instructions which I have prepared for their guidance.”
This concluding sentence suggests, it must be admitted, the possibility that, after all, the court may have intended what had been said up to that point for counsel only. Nevertheless, the bill of exceptions states it to have been addressed to the jury, and we must, therefore, so consider it.
In that opinion the court lays down the rule for determining whether the defendants are guilty of a trespass, as follows: “With regard to the form of pleading which covers or involves seven, eight, or more of the prayers of the defendants, I find that Ohitty, who is the best authority on the subject of pleadings, defines certain predicaments of various forms, all applicable where there has been a proceeding under legal authority; or where there has heen a proceeding under color of a court not having jurisdiction; or where there has been an imperfect or defective proceeding or an excess of jurisdiction, or the use of a proceeding which was rightful in itself; and also the case in which this one fell, the seventh one, where there had been an arrest without a warrant. And he lays down the doctrine very explicitly, and refers *27 to the authorities, and is himself the very highest authority upon that subject, that wherever a ministerial officer proceeds without warrant, upon the information of another, trespass and not case is the proper remedy against the informer, if the accusation turns out to he unfounded.”
It will he observed that the court, in thus instructing the jury, refers to Chitty as authority for the proposition that “ wherever a ministerial officer proceeds without warrant, upon the information of another, trespass and not case is the proper remedy against the informer if the accusation turns out to be unfounded.”
That proposition is to he found in 1 Chitty’s Pleadings, 185, 186, and the author cites three cases in support of his text; hut on examination we find that only one of them— the case in 1 Campbell, 187 — distinctly sustains him. The doctrine laid down by that case, however, was subsequently disapproved of and overruled by the Exchequer Court in Gosden vs. Elphick, 4 Exch., 445, and again in Grinham vs. Willey, 4 H. & N., 496, so that the only authority which may be said to support the text of Chitty has been overruled and decided not to be the law.
And we think that, upon principle, it cannot he so. The true principle is that where the officer proceeds upon information given him, the information is simply something which causes the act of arrest, hut is not itself the act. If the information which induces the officer to arrest the party turns out untrue, that does not make the informer a trespasser so as to make him liable in an action of trespass vi et armis,
It was error, therefore, for the court to inform the jury that if they found the conduct of the defendants consisted simply of lodging information which proved to he untrue, they could nevertheless find against them in an action of trespass. But because of the equivocal appearance of the bill of exceptions, suggesting that possibly the court may have supposed it was speaking only to counsel, we do not feel inclined to lay any stress upon this point or to rest the fate of the case upon it.
*28 Continuing, therefore, our examination of the record, we find that the court gave this instruction to the jury:
“If the jury find from the evidence that the plaintiff was arrested and imprisoned on a charge of forgery and grand larceny preferred against him by the defendant Porter; and that said arrest and imprisonment were made without warrant by one or more of the police officers of the District upon the accusation and information of said Porter, or of the defendant Miller, or both together, and that they were accompanied throughout by the defendant Hitchcock; and that said defendants did not content themselves with the statement of all their information and belief touching all the facts and circumstances which had come to their knowledge touching said alleged crimes, and then leave the officer free and uninfluenced to act upon his own official responsibility, but took an active part in aiding, advising, enconraging or assisting the officer to make the arrest; and by words or gestures, looks or signs, promoted the same, and voluntarily aided or assisted in making the arrest, or went near to the place of arrest with a view to aid or assist therein in any way that might become necessary; then the said defendants, or so many of them as the jury may find to have taken any active part in any of the ways aforesaid, in procuring, aiding or encouraging said arrest, are liable for said arrest and imprisonment in the present action.”
That is to say, that if, when the officers went to make the arrest, Miller and Hitchcock, for example, went near the •place of arrest with the intent to render aid if it should become necessary, then they must be held to have taken an active part in the arrest.
Now, undoubtedly, where an arrangement is made between the person who actually and manually makes the arrest and other persons, that the latter shall be near by, then even if they are unseen and are not actually present at the time of the arrest, the arrangement which they have made with each other and carried out by their taking such positions, makes the act of arrest the act of all the parties.
*29 Thus, in the case of a murder, if one person goes to make the attack, and others, by arrangement, are on hand to guard or give information, they are held to have all united in the crime. So, too, in this case; if the officer who was to make the arrest and Miller and Hitchcock had an arrangement with each other that the latter would guard the door or be at hand, such an arrangement among themselves would make them actors iu the arrest equally with the officer.
But this instruction of the court is not stated in that way. Without any qualification as to the necessity of some proof of an.arrangement and co-operation between the officer and these defendants, the jury were told that the fact of the defendants going with the officer, although not into the presence of the party who was to be arrested but going near to the place of arrest, constituted a part of the arrest.
It is true that if Miller and Hitchcock had gone with the officer into the room in which the plaintiff was arrested, and which the evidence shows to have been in the third story of the house, instead of staying, as they did, on the street pavement, their presence might well be understood by the jury as a participation in the arrest.
But they were not actually present, and before they can be made constructively present, it must be shown that there was an arrangement between them and the officer by which they were to co-operate with him.' What their private intention may have been, the jury were not at liberty to infer. This instruction, therefore, would have enabled the jury to find that the defendants took part in the arrest by the mere act of following the officer, with a secret intention that, under certain conditions, they would assist him. We do not think that constitutes such a participation in an arrest as would make these defendants guilty of a trespass. This instruction, therefore, did not in our opinion, correctly state the law.
Again, in the fourth instruction, the court said: “The jury are instructed that the defendants have offered no legal, sufficient evidence in this cause to establish, as against the *30 plaintiff, either of the crimes of forgery or grand larceny.” Where private persons cause an arrest to be made without a warrant, they are liable in some form of action, if it appear that no offence had been committed. Thus, in this case, it should appear that a crime — that forgery and larceny —had been commited; and next, that the defendants had reasonable cause to believe that the person actually arrested was the guilty person.
The law, however, does not go so far as to require them to produce evidence that he is guilty of the charge; and this instruction, we think, might well leave the jury to suppose that the defendants were required to establish the crime against the plaintiff. We can hardly suppose that the court meant so much as that; because, if the plaintiff were really guilty, the defendants would have been thoroughly justified in their entire conduct. Nevertheless, the jury could very well have been misled by the language of the court. These two rulings, therefore, are fatal to the case.
That brings us to consider what we shall do with the case after having found these errors. That is to say, whether we ought to send the whole case, against all the defendants, back for a mew trial, or to act conclusively and finally with regard to a portion of them, It was insisted that there was evidence, as against all of them, which the jury had a right to consider in determining whether they took part in the arrest actually made. If the case had been disposed of on the motion made at the conclusion of the plaintiff’s testimony, there would not have been a particle of evidence to connect Miller or Hitchcock with the case in any capacity.
It was not shown by the testimony that Miller was attorney in the case. All that was shown merely amounted to this: that the police officer Carter and the defendant Porter came into the plaintiff’s room; that Porter said nothing, but that Carter made the arrest; that the plaintiff put on his coat ’and went down stairs, and as he passed out he saw Miller and Hitchcock. What of it? He might have *31 seen any two persons standing there. It was a boarding house, and any of the boarders might have been standing there. No connection whatever is shown between Miller and Hitchcock and the officer making the arrest, except that they followed him and the plaintiff to the police station, where the plaintiff was left. He was not then locked up, but was left there, and the defendants went away. There is, we think, nothing in that which could connect them with the arrest. But the defendants went on to give testimony in their own behalf, and their evidence furnished the only ground to the plaintiff to argue their connection with the case.
Our conclusion is that, with regard to Miller and Hitchcock, there was no sufficient legal evidence indicating that Hitchcock did anything, and no sufficient legal evidence that Miller did anything but advise his client that an arrest should be made. We, therefore, make our judgment of reversal final as to them.
As against Porter, however, we think there is enough in the case to entitle the jury to consider the question of his connection with the arrest.
We, therefore, reverse the judgment below finally as to Miller and Hitchcock, and send the case back for a new trial as to Porter.